Justice Thomas,
dissenting.
The Federal Tort Claims Act (FTCA) waives the Government’s sovereign immunity for civil suits seeking money damages
“for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting *493 within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred,” 28 U. S. C. § 1346(b)(1),
save several exceptions found in §2680. As relevant here, Congress reserved to the Government its sovereign immunity respecting “[a]ny claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter.” § 2680(b) (postal exception).
Petitioner Barbara Dolan claims to have suffered personal injuries when she tripped over letters, packages, and periodicals that an employee of the United States Postal Service (Postal Service) negligently left on her porch. Today, the Court concludes that Dolan’s lawsuit may proceed because her claim does not fall within the exception. I disagree. Dolan’s claim arises out of the Postal Service’s “negligent transmission” of mail and is thus covered by the terms of the postal exception. Even if the exception is ambiguous, this Court’s cases require that ambiguities as to the scope of the Government’s waiver of immunity be resolved in its favor. Accordingly, I respectfully dissent.
I
The text of the postal exception, and every term therein, should be ascribed its ordinary meaning. See FDIC v. Meyer, 510 U. S. 471, 477 (1994) (noting that we interpret a statutory term in accordance with its ordinary meaning when that term is not defined in the statute). The term in controversy here is “negligent transmission.” The crux of my disagreement with the majority is its failure to assign the term “transmission” its plain meaning. That term is defined as the “[a]ct, operation, or process, of transmitting.” Webster’s New International Dictionary 2692 (2d ed. 1934, as republished 1945). “Transmit” is defined as, inter alia, “[t]o send or transfer from one person or place to another; to *494 forward by rail, post, wire, etc., . . . [t]o cause ... to pass or be conveyed.” Id., at 2692-2693. There is no cause to conclude that Congress was unaware of the ordinary definition of the terms “transmission” and “transmit” when it enacted the FTCA and the postal exception in 1946. Nor is there textual indication that Congress intended to deviate from the ordinary meaning of these terms.[1] Accordingly, I would interpret the term “transmission” consistent with its ordinary meaning, see ante, at 486, and conclude that the postal exception exempts the Government from liability for any claim arising out of the negligent delivery of the mail to a Postal Service patron, including Dolan’s slip-and-fall claim.
Rejecting the “ordinary meaning and usage” of “negligent transmission,” the majority concludes that the term covers only injury arising “directly or consequentially” from “negligence causing mail to be lost or to arrive late, in damaged condition, or at the wrong address.” Ante, at 486, 489. Thus, in the majority’s view, “negligent transmission” covers direct injury to the mail as well as personal injury arising from injury to the mail, but does not cover personal injury that does not arise from damage to the mail. For example, in the majority’s view, if a mail carrier negligently drops a box containing glassware on a patron’s doorstep, causing the contents to shatter, and the patron later injures himself while attempting to handle the shards of glass, the postal exception would bar a claim for damages for the destroyed item as well as a related claim for personal injury. That *495 view is correct, as far as it goes. However, under the majority’s view, if the mail carrier negligently places a heap of mail on a patron’s front porch and the patron trips and falls over the mail as he walks out of his front door, his personal injury claim may go forward. There is no basis in the text for the line drawn by the majority. Indeed, the majority’s view is at odds with the broad language of the postal exception, which expressly applies to “[a]ny claim arising out of . . . negligent transmission of letters or postal matter.” § 2680(b) (emphasis added).
The majority rationalizes its view by concluding that the terms “loss” and “miscarriage” necessarily limit the term “transmission.” Ante, at 486. Applying the rule of nosci-tur a sociis — that a word is known by the company it keeps— the majority reasons that because both “loss” and “miscarriage” refer to “failings in the postal obligation to deliver mail in a timely manner to the right address, it would be odd if ‘negligent transmission’ swept far more broadly.” Ante, at 487. But there is nothing “odd” about interpreting the term “negligent transmission” to encompass more ground than the decidedly narrower terms “loss” and “miscarriage.”
The rule of noscitur a sociis is intended to prevent ascribing to one word a meaning so expansive that it conflicts with other terms of the provision in a manner that gives “‘unintended breadth to the Acts of Congress.’” Gustafson v. Alloyd Co., 513 U. S. 561, 575 (1995) (quoting Jarecki v. G. D. Searle & Co., 367 U. S. 303, 307 (1961)). That rule, however, “does not require [the Court] to construe every term in a series narrowly because of the meaning given to just one of the terms,” where, as here, nothing in the text demands a more limited construction. Gustafson, supra, at 586 . (Thomas, J., dissenting) (emphasis deleted). Indeed, to read Congress’ use of narrow terms in a list as limiting the meaning of broad terms in the same list “would defy common sense; doing so would prevent Congress from giving effect to expansive words in a list whenever they are combined *496 with one word with a more restricted meaning.” 513 U. S., at 587.
Nor does this Court’s opinion in Kosak v. United States, 465 U. S. 848 (1984), support the majority’s narrow construction of the postal exception. In Kosak, this Court suggested that the postal exception does not apply to suits arising from the negligent handling of motor vehicles by Postal Service employees. Specifically, the Court stated:
“One of the principal purposes of the [FTCA] was to waive the Government’s immunity from liability for injuries resulting from auto accidents .... In order to ensure that § 2680(b)... did not have the effect of barring precisely the sort of suit that Congress was most concerned to authorize, the draftsmen of the provision carefully delineated the types of misconduct for which the Government was not assuming financial responsibility — namely, ‘the loss, miscarriage, or negligent transmission of letters or postal matter’ . . . .” Id., at 855 (emphasis added).
That observation has no import beyond the recognition that the postal exception — whatever its scope may be — was carefully crafted so as not to undermine an undisputed principal purpose of the FTCA — to waive the Government’s immunity for injuries arising from auto accidents. It says nothing further about the acts Congress intended to capture when enacting the postal exception, and, thus, is unremarkable for purposes of construing the exception.[2]
*497 Even if Kosak does inform the outcome in this case, it does not support the majority’s interpretation of “negligent transmission.” As discussed above, the majority does not purport to limit the type of negligent act that may fall under the postal exception; rather it limits the scope of the exception based on the type of consequence that the negligent act causes (damage to the mail, late delivery, etc.). But Kosak's exclusion of the act of negligent driving — regardless of whether the consequence of that act is damage to the mail or injury to a person — from the scope of the postal exception implies, if anything, that the Kosak Court envisioned discrete acts as being covered, independently of the nature of their consequences. See ibid, (excluding “negligent handling of motor vehicles” from the “types of misconduct” for which liability is barred by the postal exception). As such, Kosak does not support an interpretation of “negligent transmission” based upon the type of injury that is caused by the Postal Service’s negligent handling of the mail.
Assuming that the postal exception is ambiguous, as the majority suggests, see ante, at 486-487, settled principles *498 governing the interpretation of waivers of sovereign immunity require us to rule in favor of the Government.
A court may only exercise jurisdiction over the Government pursuant to “a clear statement from the United States waiving sovereign immunity ... together with a claim falling within the terms of the waiver.” United States v. White Mountain Apache Tribe, 537 U. S. 465, 472 (2003). “[A] waiver of the Government’s sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign.” Lane v. Peña, 518 U. S. 187, 192 (1996). These settled legal principles apply not only to the interpretation of the scope of the Government’s waiver of immunity, but also to the interpretation of the scope of any exceptions to that waiver. See ibid, (explaining that, consistent with rules of construction respecting waivers of sovereign immunity, ambiguities created by conditions on and qualifications of the waiver must be strictly construed in favor of sovereign immunity).
Thus, the majority is incorrect to conclude that “this case does not implicate the general rule that ‘a waiver of the Government’s sovereign immunity will be strictly construed, in terms of its scope, in.favor of the sovereign.’” Ante, at 491. As this case clearly illustrates, the Government’s amenability to suit can only be ascertained after construing both the waiver of immunity and its exceptions. The well-established rationale for construing a waiver in favor of the sovereign’s immunity, thus, applies with equal force to the construction of an exception to that waiver. Accordingly, even if I were to conclude that the majority’s interpretation of “negligent transmission” were as plausible as my own, I would still resolve this case in favor of the Government’s sovereign immunity as mandated by our canons of construction.[3]
*499 * * *
For these reasons, I would hold that a tort claim for personal injury arising out of negligent delivery of mail to a postal patron is barred by 28 U. S. C. § 2680(b), the postal exception. Accordingly, I would affirm the judgment of the Court of Appeals.

 In fact, this reading is supported by Congress’ routine definitional use of the terms “transmission” and “transmit” in both criminal and civil postal statutes to refer to the handling, processing, and delivery of mail to a final destination. See, e. g., Act of Mar. 3,1845, ch. 43, § 6,5 Stat. 734 (respecting deputy postmasters authorized “to transmit to any person or place” official letters or packages, free of charge); 18 U. S. C. §§ 1696(b) and (c) (referring to unlawful “transmission” of letters); §§ 1716(b), (c), (d), and (e) (regulating and proscribing “transmission in the mails” of dangerous items (e. g., medicines) except when the “transmission” is “to,” “from,” or “between” specified individuals or entities).

 In an attempt to reconcile Kosak with this case, the majority argues that “one purpose of the FTCA exceptions was to avoid ‘extending the coverage of the Act to suits for which adequate remedies were already available,’... an objective consistent with retaining immunity as to [some] claims of mail damage or delay covered by postal registration and insurance.” Ante, at 490-491 (quoting Kosak, 465 U. S., at 858). The majority, however, ignores the fact that, in most cases, such insurance covers only the sender, not the recipient, in which case recipients have no means of obtaining compensation for loss or damage to money, gifts, heirlooms, *497 valuable papers, delayed medicine, or time-sensitive documents. See United States Postal Service, Mailing Standards, Domestic Mail Manual 609.4.3(f) and (ae), pp. 1129,1130 (rev. Jan. 6, 2005). ■ The majority’s justification also fails to take into account the fact that postal patrons cannot insure against the loss of items of sentimental value. See 609.4.3, generally. With a more accurate depiction of registration and insurance coverage in hand, the Government’s claim that, like injuries arising from negligent transmission of mail, other injuries outside the reach of the FTCA are also amenable to administrative relief is not so easily dismissed. Ante, at 491. Specifically, 39 U. S. C. §2603, as the Government argues, provides for the settlement of claims, within the discretion of the United States, for injuries caused by the Postal Service that are not otherwise cognizable, which would include claims like Dolan’s. The discretionary nature of such settlements does not alter the fact that §2603 undermines the Court’s position that the purported unavailability of administrative recovery for claims such as Dolan’s supports its proposed interpretation.

 There is no canon of construction that counsels in favor of construing the ambiguity against the Government. Although we have “on occasion narrowly construed exceptions to waivers of sovereign immunity,” we *499 have done so in eases where Congress plainly waived the Government’s immunity for the particular claim at issue, and the only question before the Court was the permissibility of the form of the suit. United, States v. Nordic Village, Inc., 503 U. S. 30,34 (1992) (citing United States v. Yellow Cab Co., 340 U. S. 543 (1951), and United States v. Aetna Casualty & Surety Co., 338 U. S. 366 (1949)). In cases where, as here, the question whether a particular claim is subject to an exception is disputed, we have construed FTCA exceptions broadly to preclude claims for actions Congress intended to except from the FTCA’s general waiver of immunity. See Dalekite v. United States, 346 U. S. 15, 31 (1953); United States v. Orleans, 425 U. S. 807 (1976); Kosah v. United States, 465 U. S. 848 (1984).